UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DENIS J. MONETTE,

       Plaintiff,

    -against-

THE COUNTY OF NASSAU, and
LAWRENCE W. MULVEY (in his official
and individual capacity),

       Defendants.
------------------------------------------------------------------X

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y

★ FEB 0⁹ 2011 ★

LONG ISLAND OFFICE
**COMPLAINT**

Jury Trial Demanded

(SI)

# CV-11 0539

**BIANCO, J.**

**TOMLINSON**

Plaintiff, DENIS J. MONETTE, through his attorneys, LEEDS MORELLI & BROWN,

P.C., alleges upon knowledge as to himself and his own actions, and upon information and belief

as to all other matters, as follows:

## JURISDICTION AND VENUE

1.    This is a civil action for compensatory and punitive damages, proximately resulting from

defendants' violations of Plaintiff's rights as guaranteed him by the First and Fourteenth

Amendments to the Constitution of the United States and is brought pursuant to 42

U.S.C. § 1983.   This action is also brought pursuant to the Age Discrimination in

Employment Act of 1967 ("ADEA"), the Americans with Disability Act, and any other

cause of action which can be inferred from the facts set forth herein.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

ORIGINAL

1

3.    Venue is proper pursuant to 28 U.S.C. § 1391.

4.    On August 11, 2010, Plaintiff filed a charge of discrimination with the EEOC.  On November 9, 2010, the EEOC issued to Plaintiff a right to sue letter.

**PARTIES**

5.    Plaintiff, Denis J. Monette, ("Monette "), was and still is a resident of Nassau County, State of New York.

6.    Defendant, County of Nassau ("Nassau"), at all times hereinafter mentioned, was and still is a municipal corporation of the State of New York, with its principal place of business at 1550 Franklin Avenue, Mineola, New York.

7.    Upon information and belief, defendant Lawrence W. Mulvey ("Mulvey") is an individual employed by the NCPD. Mulvey is the current Police Commissioner of the Nassau County Police Department.  Therefore, Mulvey is currently responsible for NCPD's maintenance and operation, including, but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Mulvey is the final policymaker for the NCPD, charged with and responsible for properly training and supervising employees with respect to employment issues.  Mulvey works in Nassau County.  Mulvey is sued in his official and individual capacity.

2

## FACTS

8.    Plaintiff, Denis J. Monette ("Monette"), born on May 6, 1948, is a male and a registered republican.  Accordingly, at all relevant times, Plaintiff was over the age of 60.

9.    On August 2, 1968, Monette commenced employment with the Nassau County Police Department ("NCPD").

10.   Monette performed his work with the NCPD in exemplary manner, becoming a highly decorated member of the department.

11.   On January 2, 1991, Monette retired with a standard pension, but New York State subsequently converted Monette's pension to a disability pension because Monette had two herniated vertebral discs in his back from a line of duty injury received during a major robbery investigation.

12.   On January 1, 2002, County Executive Tom Suozzi ("Suozzi"), a democrat, appointed Monette as Director of Public Safety.

13.   In or about June 2003, Suozzi appointed Monette as Assistant Commissioner of Police. Monette worked at Police Headquarters in Mineola, New York.

14.   The Assistant Commissioner of Police does not have access to confidential political information, is not a policymaking position, and does not provide political advice to an

elected official. Accordingly, party affiliation is not an appropriate requirement for effective performance of the Assistant Commissioner's job duties.

15. On July 1, 2007, Suozzi appointed Lawrence Mulvey ("Mulvey") to be Commissioner of Police.

16. Upon his appointment, Mulvey forced four chiefs to retire. Upon information and belief, the three male chiefs were all over the age of 60 and the fourth chief was a female.

17. Mulvey also met with Monette and told him that Monette was going to be forced out, as well. Mulvey mentioned that Monette's disability was "bogus." Monette called Suozzi, who assured Monette that his job was secure.

18. In July 2007, Monette was reassigned to an "office" in the basement of the Nassau County Jail in East Meadow, New York. The "office," which was a run-down cubicle, had no secretary, no staff whatsoever, and was located next to the jail locker room and communications office. Accordingly, Monette could not conduct his police duties in private.

19. Additionally, Mulvey refused to allow Monette to have his phone calls forwarded from his former office line at headquarters, to a line at the Jail or to his cell phone. Other high ranking police department officials who are younger than Monette were not subjected to such working conditions.

4

20.     In July 2007, after seeing the working conditions in which Mulvey was forcing him to work, Monette complained to Suozzi and Deputy County Executive Frank Ryan that Mulvey was trying to force Monette to retire because he is old.

21.     In July 2007, Monette also complained to Mulvey.  Monette complained that if Mulvey was trying to force Monette out of the department because of age like he did the chiefs, it would not work.

22.     Additionally, Monette complained to Lewis Yevoli, a member of Suozzi's administration and a confidant of Suozzi.  Upon information and belief, Yevoli conveyed the complaint about being forced out because of age and disability to both Suozzi and Ryan.

23.     Following the complaints, Monette's departmental pictures were removed from the walls of the police academy and police headquarters.  Pictures of all members of the department's senior management are posted at such locations.

24.     Additionally, Mulvey ordered that Monette would not be permitted to attend police memorial services, attend staff meetings, attend police recruit graduations, and the promotion ceremony and was not invited to attend other police events, such as the open house, although other high ranking department officials who are younger than Monette and who did not complain about unlawful discrimination were invited to such events.

Upon information and belief, members of the department took Monette's absence from these events as a sign of disrespect to them.

25. As Assistant Police Commissioner, one of Monette's responsibilities was to act as liaison with the Office of Emergency Management ("OEM"). As per Mulvey's direction, the OEM Commissioner ignored Monette and Monette was not invited to OEM meetings and was not permitted to participate in any OEM events.

26. Upon information and belief, Mulvey instructed the department's chiefs not to talk to Monette, thus frustrating the discharge of Monette's duties.

27. Monette worked on progressive and important police department programs, including the STARCOM joint terrorism task force. STARCOM is a joint terrorism task force consisting of many agencies, such as the New York City Police Department, Suffolk County Police Department, Coast Guard, FBI, DEA, treasury, and ATF. Despite his significant work in establishing and promoting STARCOM, Mulvey impeded Monette's further work on STARCOM. Minutes before it was scheduled to begin, Mulvey cancelled Monette's position in a tabletop exercise organized by Monette causing humiliation and embarrassment. Mulvey also told other NCPD agencies to boycott STARCOM events. Other high ranking police officials who did not complain about unlawful discrimination and who were younger than Monette did not have their projects sabotaged.

6

28.     Technicians regularly checked the global positioning system ("GPS") in Monette's official vehicle which system records the distance the car is driven and the speed and the information can be used to determine whether the driver complies with vehicle and traffic regulations.  Other official cars that were driven by high ranking police officials who did not complain about unlawful discrimination and who were younger than Monette did not have their GPS systems checked as frequently, if at all.

29.     Monette continued to complain.  In September 2007, Monette complained to Suozzi again that he was being forced out and humiliated because of age.  Monette repeated this complaint every few months.

30.     On March 2008, Monette called Ryan at home and complained that Mulvey did not allow him to participate in the STARCOM exercise.  Monette further elaborated that such conduct was the "straw in the camel's back" in Mulvey's attempt to force Monette out because of age.

31.     In May 2008, Monette repeated his complaints to Ryan by calling him at home.

32.     In the spring of 2009, Ed Mangano, a republican, announced his candidacy for County Executive.  Mangano would be running against incumbent County Executive Suozzi, a democrat.

33.     Shortly after Mangano announced his candidacy, Monette began supporting and campaigning for Mangano.  Specifically, Monette donated money to Mangano, Monette called friends and had them donate money to Mangano, and Monette arranged a fundraising event for Mangano.

34.     Upon information and belief, Mulvey ordered "phone dumps" for the personal telephone numbers used by Monette, Mangano, and Mangano's assistant, Rob Walker.  A phone dump is a list of incoming and outgoing phone numbers received or placed from a designated number.

35.     Upon information and belief, the phone dumps revealed that Monette and Mangano had several telephone calls between each other prior to the election.  Upon further information and belief, Mulvey had no legal justification to issue the subpoena for a phone dump and the sole reason for its issue was to investigate the relationship between Monette and Mangano.

36.     On November 3, 2009, the election for County Executive was held.

37.     As of November 4, 2009, the election was too close to call a winner, but Mangano was ahead of Suozzi by several hundred votes.

38.     On November 13, 2009, Mulvey, without lawful reason, terminated Monette's employment with the County.  Upon information and belief, Monette's termination was

motivated, in part, by his association with Mangano and the Republican party and because of Monette's age and disability and/or in retaliation for his complaints of age and disability based discrimination.

39.    Termination from the NCPD is rare.  Typically, officials are given the opportunity to resign.  A termination signals to members of the department that the terminated official engaged in misconduct.    When an official has not engaged in misconduct, but is nevertheless terminated, such as Monette, that official leaves embarrassed from the department. No other police official was terminated or asked to resign in November 2009.

40.    As a result of his years of service with the County, at the time of his termination Monette was entitled to receive $65,000 in accrued, unused leave time.

41.    As a Nassau County employee with more than ten years of service, Monette is entitled to receive health insurance benefits for life.  Despite this, Monette's health insurance coverage was canceled, even though his lifetime health insurance coverage vested from his original service from 1968-1991.  Other former officials who are younger than Monette, who did not complain about discrimination, who did not publicly support and associate with the Republican candidate for County Executive, and who were entitled to such a health insurance benefits, did not have their benefits canceled upon termination.

42.   Monette was also told that the $65,000 owed to him for unused leave time would be paid in equal parts over three years.

43.   On December 4, 2009, Suozzi conceded the election to Mangano.

44.   In or about December 2009, the Nassau County legislature amended County law to ensure that Democratic employees who would be terminated by the incoming Republican administration were not subject to the same three year pay out period as is Monette.

45.   By reason of Defendants' violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with his employment in addition to suffering physical, emotional and other damages.

## CLAIMS FOR RELIEF

46.   Defendants acted under color of state law.  As such, Defendants have violated Plaintiff's rights under the United States Constitution including his: (a) Freedom of Expressive Association; (b) Freedom of Speech; and, (c) due process rights.

47.   The Defendants have, while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.  Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.

48.     Under <u>Monell v. New York City Dep't of Soc. Servs.</u>, the County of Nassau is also liable under Section 1983 because the Constitutional violations, as alleged herein, were committed by Police Commissioner Mulvey, a County policymaker.

49.     By refusing to pay Plaintiff the full amount of his accumulated leave and compensatory time upon retirement and refusing to provide lifetime medical benefits as required by County code, the individual Defendant unlawfully participated in and/or permitted the aforementioned deprivation of constitutional rights to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

50.     Plaintiff has been subjected to adverse employment actions and a hostile work environment based on his age and disability and/or in retaliation for his complaining of such discrimination, in violation of the Age Discrimination in Employment Act of 1967, the Americans with Disability Act, and the New York State Executive Law, Human Rights Law, § 290 *et seq*.

51.     As more fully set forth above, the individual Defendant, aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law § 296(6)

WHEREFORE, Plaintiff demands judgment against Defendants, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay,

reinstatement, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Carle Place, New York
       February 1, 2011

                                        Respectfully submitted,

                                        LEEDS, MORELLI & BROWN
                                        *Attorneys for Plaintiffs*
                                        One Old Country Road
                                        Carle Place, N.Y. 11514
                                        (516) 873-9550

                                        _____
                                        MATTHEW WEINICK

12