# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 11-CV-539 (JFB) (AKT)

DENIS J. MONETTE,

Plaintiff,

VERSUS

THE COUNTY OF NASSAU AND LAWRENCE MULVEY,

Defendants.

**MEMORANDUM AND ORDER**
August 4, 2016

JOSEPH F. BIANCO, District Judge:

Plaintiff Dennis Monette ("plaintiff") brought this employment discrimination action against the County of Nassau ("the County") and Lawrence Mulvey (collectively "defendants") after he was terminated as Assistant Commissioner of the Nassau County Police Department on November 13, 2009. Plaintiff alleged that he was fired for several unlawful purposes, including in retaliation for the exercise of his First Amendment rights. After a trial in January 2014, a jury found for plaintiff on his First Amendment claim against the County, brought under 42 U.S.C. § 1983, and awarded plaintiff $150,000 in compensatory damages. The parties agreed that back pay, front pay, and reinstatement were equitable remedies for the Court's determination, and agreed to submit post-trial briefs on these issues. The County also submitted a post-trial motion seeking judgment as a matter of law and a new trial on damages, or remittitur of the $150,000 award. In a March 31, 2015 Order, the Court denied the County's post-trial motion and partially granted plaintiff's request for back pay.

Presently before the Court is plaintiff's motion for attorneys' fees, costs, and expenses. For the reasons set forth below, the Court awards plaintiff $222,153.00 in attorneys' fees and $4,576.98 in expenses.

I. BACKGROUND

A. Factual Background

The Court has set forth the background facts of this case in the March 31, 2015 Order denying the County's post-trial motion and partially granting plaintiff's request for back pay, *see Monette v. Cty. of Nassau*, No. 11-CV-539 (JFB) (AKT), 2015 WL 1469982, at *2-5 (E.D.N.Y. Mar. 31, 2015), and does not repeat those facts here. Instead, the Court discusses all relevant facts

in conjunction with its analysis of each issue raised by the instant motion.

B. Procedural History

Plaintiff filed the complaint in this case on February 3, 2011, asserting a variety of claims of employment discrimination under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the New York Human Rights Law. On January 10, 2013, the Court denied defendants' motion for summary judgment.

A jury trial was held from January 23, 2014 until January 31, 2014. On January 31, 2014, the jury found in plaintiff's favor against the County on the Section 1983 First Amendment claim. The jury awarded plaintiff $150,000 in compensatory damages for emotional distress, after the parties agreed that back pay, reinstatement, and front pay were equitable remedies for the Court's decision. The parties filed post-trial briefs concerning plaintiff's entitlement to those remedies, and the County also filed a motion for a new trial under Federal Rule of Civil Procedure 59, and a renewed motion under Rule 50 for judgment as a matter of law based on the policymaker defense. In a March 31, 2015 Order, the Court denied the County's post-trial motion and partially granted plaintiff's request for back pay. The parties filed cross-appeals of this Order, but ultimately settled by simultaneously withdrawing their appeals.

On January 15, 2016, plaintiff filed his motion for attorneys' fees, costs, and expenses. The County submitted its opposition on February 19, 2016, and plaintiff submitted his reply on March 14, 2016. Oral argument was held on March 23, 2016. Counsel for plaintiff submitted a supplemental letter on May 20, 2016. The Court has fully considered all of the parties' submissions.

II. DISCUSSION

Plaintiff requests $310,372 in attorneys' fees incurred through the end of January 14, 2016, plus an upward adjustment to this figure, as well as $5,433 in expenses incurred as of January 14, 2016. The County contends that plaintiff's requested attorneys' fees should be reduced by 40% based upon billing irregularities and plaintiff's limited success at trial. The County suggests that a reasonable fee award would be $96,855.60. For the following reasons, the Court awards plaintiff $222,153.00 in attorneys' fees and $4,576.98 in expenses.

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, 42 U.S.C. § 1988(b) provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C.A. § 1988(b); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984) ("[I]n

2

federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (quoting 42 U.S.C. § 1988)).

Generally, to determine a reasonable attorney's fee, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); citing *Perdue*, 559 U.S. 542). "'[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee' . . . ." *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433).

A. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "Fees should not be awarded at higher out-of-district rates unless 'a reasonable client would have selected out-of-district counsel because doing so would likely . . . produce a substantially better net result.'" *Id.* (quoting *Simmons*, 575 F.3d at 172). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93, 96 (1989). *See* 522 F.3d at 190.

> The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19). Finally, a district court should also

3

consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298 (internal quotation marks and citations omitted).

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (internal quotation marks and citations omitted)). Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

1. Rick Ostrove

Rick Ostrove ("Ostrove"), the partner who performed work on behalf of plaintiff in this action, requests a rate of $450 per hour and suggests that the Court should even consider raising his rate. The County argues that a reasonable hourly rate for Ostrove would be no more than $400 per hour.

In support of his request, Ostrove submitted a declaration stating that he has "almost two decades of experience working in the field of employment law" and "extensive federal trial experience in the field," and that he "believe[s] there are very few practitioners that have equivalent trial experience and success representing plaintiffs in the Eastern District." (Ostrove Decl., at ¶ 16.) Ostrove states that he has "handled and supervised a caseload which consists primarily of civil rights/employment cases" and has "developed extensive familiarity in this field." (*Id.* at ¶ 18.) Ostrove states that he "served as lead trial counsel in approximately thirty cases in Federal and State Court which were brought to verdict" and prevailed in eighteen trials in which he was lead trial counsel. (*Id.*) Ostrove's declaration also includes his experience in other types of cases, his appeals experience, his lecturing and speaking appearances, his leadership in the Nassau County Bar Association's Labor and Employment Law Committee, and awards received.

Ostrove also submitted several declarations from other attorneys. (*See* Ex. D to Pl.'s Mem.) For example, Paul S. McDonough, Esq. states that, in his work with the Nassau County Bar Association's Labor and Employment Committee, he has "worked extensively with Rick Ostrove" and believes him to be "exceptionally knowledgeable in the areas of civil rights law, employment law, and litigation generally." (McDonough Decl., at ¶ 8.) McDonough states that "[o]ver the years, [he] often consulted with Rick to get his input on various employment related issues"

4

and that Ostrove's advice is "always well reasoned." (*Id.*) He also states that he has "heard many of [his] peers on the Labor and Employment Committee ask Rick for advice," that he "recommended that people ask Rick's opinion on various issues," and that "[a]fter [he] ceased representing Plaintiffs in employment matters, [he has] referred all such clients to Rick because [he] respect[s] his abilities as a lawyer." (*Id.*) McDonough also states that he "do[es] not believe that there are more than a handful of litigators who regularly practice in the field of labor and employment law that have more success than Rick in the Eastern District." (*Id.* at ¶ 10.)

Robert J. Valli, Esq., states that he co-counseled with Ostrove on various discrimination cases from about June 1997 to June 2007, and that they "have both been practicing in the area of civil rights law for approximately the same amount of time." (Valli Decl. at ¶ 6.) Valli states that he has "watched Ostrove develop into an extremely knowledgeable and skilled employment discrimination litigator" and that he and his partners "all view him as one of the preeminent lawyers in the field of employment discrimination" and "believe[s] many of [his] peers hold similar feelings towards him." (*Id.* at ¶ 7.) Christopher Marlborough, Esq., who focuses on litigation in the areas of labor and employment and consumer class action law, states that he has "tremendous respect for Mr. Ostrove's knowledge of litigation tactics and civil rights law" and that he has "consulted with him to obtain his insights and thoughts regarding various litigation issues" and found Ostrove to be a "valuable resource." (Marlborough Decl. at ¶¶ 3, 5.)

The declarations also include other attorneys' hourly rates and rates awarded to them by courts in prior cases. For example, Valli, who has been practicing law since 1991 and has been focusing on labor and employment law since 1997, states that he currently bills at a rate of $500 per hour and that, in August 2015, he was awarded $450 per hour in *D'Ammunzio*, a case that involved claims of sexual harassment. (Valli Decl. at ¶¶ 1, 3.) Valli further states that his partners who have "less tenure in the field and less trial experience than Ostrove" bill at $450 per hour and were awarded $400 per hour in *D'Ammunzio*. (*Id.* at ¶ 4.) Marlborough, who has been practicing law since 2003 and focusing on labor and employment and consumer class action law since 2007, states that he was awarded a 1.15% lodestar multiplier to his hourly rate of $555 as part of a 2014 settlement of a wage and hour case. (Marlborough Decl. at ¶¶ 3-4.)

In light of the prevailing hourly rates in this district, and all other factors set forth in *Arbor Hill*, the Court concludes that $425 per hour is a reasonable hourly rate for Ostrove. The Court bases this conclusion primarily on its own observations of Ostrove's abilities over the course of this litigation. In particular, Ostrove's performance—along with the affidavits submitted in support of his fee request—show that he is an experienced lawyer, with almost two decades of experience in employment litigation and extensive trial experience. Accordingly, this Court concludes that an hourly rate at the high end of the range in this district is warranted. *See Hugee*, 852 F. Supp. 2d at 300 ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields."). Although plaintiff has cited a few cases in which an attorney was awarded an hourly rate of $450 (some of which involved a different subject

matter), the Court concludes that such an award would be unduly high given counsel's level of experience and the particular circumstances of this case. *See, e.g.*, *Anderson v. Cty. of Suffolk*, No. CV 09-1913 (GRB), 2016 WL 1444594, at *4 (E.D.N.Y. Apr. 11, 2016) (holding that rate of $450 per hour was warranted for well-known civil rights attorney with almost thirty years of experience who is regarded as an expert and leader in his field); *Sass*, 6 F. Supp. 3d at 263 (awarding $425 per hour rather than the requested $450 for attorney with "33 years of experience trying approximately 500 employment discrimination cases"); *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301–02 (E.D.N.Y. 2010) (holding that $400 per hour was a reasonable hourly rate for leading civil rights attorney with over twenty-five years of experience in the field); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 399 (E.D.N.Y. 2010) (holding that $400 per hour was a reasonable rate for a partner with seventeen years of employment discrimination litigation experience).[1]

2. Matthew Weinick and Brandon Okano

Plaintiff requests a rate of $325 per hour for Matthew Weinick and $300 per hour for Brandon Okano. The County argues that a reasonable rate for Weinick is no more than $300 per hour, and for Okano is no more than $200 per hour.

Weinick has practiced law since January 2009. (Weinick Decl. at ¶ 9.) After law school, from 2008 to 2010, Weinick worked for the Nassau County Attorney's Office General Litigation Bureau, where he primarily represented the County and its employees in civil rights and employment litigation. (*Id.* at ¶ 10.) He joined Leeds Brown in March 2010 as an associate and was eventually promoted to senior associate. (*Id.* at ¶ 11.) Weinick opened his own law firm, Farmighetti & Weinick, PLLC, in February 2014. (*Id.* at ¶ 15.) Weinick states that he drafted the complaint in this case; handled discovery, including deposing the former Nassau County Commissioner of Police; drafted and argued the oppositions to defendants' motions for summary judgment and motions *in limine*; served as co-counsel at trial, where he handled the opening statement and direct examination of plaintiff, argued against defendants' policymaker defense, worked with Ostrove to make decisions on jury selection, trial strategy, and to prepare the summation; and has reviewed and edited the post-trial papers. (*Id.* at ¶¶ 3–4, 6, 12.) Weinick states that his standard billing rate ranged from $300–375 per hour when he worked at Leeds Brown. (*Id.* at ¶ 7.) Weinick also states that he served as co-counsel in five federal employment discrimination trials, independently handled a state court Article 78 hearing and an arbitration, has argued appeals before the Second Circuit and Second Department, and has prepared at least three to four other federal cases for trial that ultimately settled. (*Id.* at ¶ 13.) Weinick's declaration also details awards that he has received, articles that he has published, and classes that he has taught. (*Id.* at ¶¶ 14, 16–17.) Weinick also states that he was previously awarded $350 per hour in an uncontested default judgment motion for a FLSA minimum wage case in the Southern District of New York and as

---

[1] In arriving at this hourly rate, the Court has also considered all of the *Johnson* factors. *See Arbor Hill*, 522 F.3d at 190. For example, the Court has determined that this case involved some complex and novel issues, such as the issue of plaintiff's back pay, for which there was a "lack of directly analogous authority." *Monette*, 2015 WL 1469982, at *16. However, the case was not so complex as to warrant the requested $450 per hour rate.

6

part of an FLSA overtime/retaliation settlement before Magistrate Judge Tomlinson. (*Id.* at ¶¶ 19–20.)

Okhano began his legal career at Pyror & Madelup, LLP in October 2009, where he worked for approximately two years. (Okhano Decl at ¶ 3.) Okhano states that Pyror & Madelup focused on bankruptcy, bankruptcy litigation, and commercial litigation, and that "his primary role at P&M was as a researcher and writer, drafting memoranda of law and legal briefs filed in state and federal court." (*Id.*) Okhano became an associate at Leeds Brown in May 2012, where he has "worked almost exclusively on matters relating to employment discrimination" and where his "primary role is as a researcher and writer, drafting memoranda of law and legal briefs filed in state and federal court." (*Id.* at ¶ 4.) Okhano states that his hourly rate at Leeds Brown ranges from $300 to $375 per hour. (*Id.* at ¶ 5.) Okhano states that he began working on this case after Weinick left the firm, assumed Weinick's co-counsel role, and worked on the "post-trial activities," including the post-trial briefs, under Ostrove's supervision. (*Id.* at ¶ 6.)

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill* and *Johnson*, the Court concludes that $300 per hour is a reasonable rate for Weinick and that $225 is a reasonable rate for Okhano. Courts within the Eastern District of New York have found reasonable hourly rates to be approximately $200–$325 for senior associates. *See, e.g.*, *Mary Jo C. v. Dinapoli*, No. 09-CV-5635 (SJF) (ARL), 2014 WL 7334863, at *5 (E.D.N.Y. Dec. 18, 2014) ("Recent prevailing hourly rates for attorneys practicing in the Eastern District of New York are . . . between two hundred to three hundred twenty-five dollars ($200.00–$325.00) for senior associates or attorneys with more limited experience."); *Sass*, 6 F. Supp. 3d at 261 (same). The Court notes that although both Weinick and Okhano were described as senior associates, Okhano only began focusing on employment discrimination cases in May 2012, whereas Weinick practiced almost exclusively in the area of employment law since he began his legal career in 2008. Further, Weinick appears to have had a more significant role throughout the litigation. Thus, the Court concludes that it is appropriate to award a higher rate for Weinick than Okhano.

3. Paraprofessionals

Plaintiff seeks $100 per hour for the paraprofessionals who worked on this case, Ricardo Guerra and Laura Bove. The County does not object to this rate. Guerra has worked at Leeds Brown for almost eight years, Bove has worked at Leeds Brown for almost six years, and Ostrove states that both were "experienced paralegal[s]" when they worked on this matter. (Ostrove Decl. at ¶¶ 33-34.) Ostrove states that both "performed substantial legal work including, but not limited to, drafting, discovery requests/responses, correspondence, helping prepare pre-trial orders, preparation of trial exhibits, as well as other paraprofessional responsibilities." (*Id.*) In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill* and *Johnson*, the Court concludes that $100 per hour is a reasonable rate for Guerra and Bove given their experience. *See, e.g.*, *Barrella v. Vill. of Freeport*, 56 F. Supp. 3d 169, 174 (E.D.N.Y. 2014) (awarding $100 for paralegals' hourly rate).

B. Reasonable Hours

Having determined the reasonable hourly rates, the Court must determine the reasonable number of hours expended by plaintiff's counsel in this litigation.

7

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Hensley*, 461 U.S. at 434; *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's fifty percent across-the-board reduction in hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." 757 F.3d 31, 64 (2d Cir. 2014) (internal quotation marks and citations omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding 40% across-the-board reduction in hours); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding 15% across-the-board reduction); *Kirsch*, 148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

In the instant case, the records submitted indicate that Ostrove spent 295 hours on this litigation plus 21.08 hours on travel, Weinick spent 266.25 hours on this litigation plus 13.5 hours on travel, Okano spent 272 hours on this litigation plus 1.75 hours on travel, Bove spent 4.25 hours on this litigation, and Guerra spent 18.67 hours on this litigation. The County argues that plaintiff's request for attorneys' fees should be reduced by 40% across the board due to questionable billing practices, including (1) inconsistent billing entries; (2) block-billed entries; (3) vague billing entries; (4) excessive billing; (5) duplicated efforts; and (6) clerical work by attorneys or paralegals. (County's Opp. at 10–11.) The Court determines that counsel's hours should be reduced by twenty percent because of several major problems with plaintiff's counsel's billing records. *See, e.g.*, *Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 466–469 (W.D.N.Y. 2010) (applying 20% reduction for excessive, redundant, and vague time entries); *Lucerne Textiles, Inc. v. H.C.T. Textiles Co.*, No. 12 CIV. 5456 (KMW) (AJP), 2013 WL 174226, at *10 (S.D.N.Y. Jan. 17, 2013) (applying 20% reduction for time spent by attorneys completing administrative tasks, and excessive billing), *report and recommendation adopted*, No. 12 CV 5456 (KMW) (AJP), 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 CIV. 6441 (LAK)(HBP), 2003 WL 21976400, at *5 (S.D.N.Y. Aug. 19, 2003) (applying 20% reduction "to compensate for inefficiencies due to over-staffing and excessive time expenditures"), *aff'd sub nom. Auscape Int'l v. Nat. Geographic Soc'y*, No. 02 CIV. 6441 (LAK), 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003).

The County argues that an across the board reduction is warranted based on

counsel's vague and block-billed time entries. Although the County points to two entries that it contends are impermissibly vague, the Court has reviewed the invoices and finds that, overall, the invoices describe the work performed in sufficient detail. However, the Court notes, with respect to a break-down of time spent on each item, there was repeated use of block-billing such that the reasonableness of each entry could not be as easily determined. Thus, the Court, in its discretion, has determined that a reduction to billed hours is appropriate in this case. *See, e.g.*, *Spence v. Ellis*, No. CV 07-5249 (TCP) (ARL), 2012 WL 7660124, at *7 (E.D.N.Y. Dec. 19, 2012) (reducing hours in attorneys' fees application because the "substantial amount of block billing in the fee requests here renders it difficult to determine whether, and/or the extent to which the work done by plaintiff's attorneys is duplicative or unnecessary"), *report and recommendation adopted*, No. 07-CV-5249 (TCP), 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013); *Molefi v. Oppenheimer Trust*, No. 03 CIV. 5631 (FB) (VVP), 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for, *inter alia*, a "substantial amount" of block-billing); *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying 10% reduction based on counsel's "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined"); *Aiello v. Town of Brookhaven*, 94 CIV. 2622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block-billing).

The County also argues that a reduction is warranted based upon inconsistent billing entries between attorneys attending the same event. In particular, the County points to a January 27, 2014 entry in which Ostrove billed 8 hours and Weinick billed 9.5 hours for their appearances at trial (in addition to their travel time), although the Court's Minute Entry indicates that the parties were in Court for only 6 hours. (ECF No. 66.) In response, plaintiff contends that the Court's docket entry is inaccurate and that Ostrove and Weinick performed different tasks on this day in addition to their trial work. (Pl.'s Reply at 6–7.) As an initial matter, the Court disagrees with plaintiff's contention that the docket entry is incorrect. In any event, the notion that the billing entries are different because Weinick's entry includes preparation work as well attendance at trial underscores the larger issue of block-billing in the majority of counsel's entries. Plaintiff also attempts to justify the inconsistencies in the January 7, 2014 and January 13, 2014 entries by claiming that Ostrove and Wenick performed different tasks that day in addition to participating in court conferences. As previously discussed, such block-billing makes it difficult to determine whether each entry was reasonable and warrants a reduction in hours billed in this case.

The County further argues that a reduction is warranted based on excessive billing and duplicative entries. The Court concludes that the requested amount of hours is excessive and warrants an across-the-board percentage cut in order to trim the excess from counsel's billing entries. *See, e.g.*, *Kirsch*, 148 F.3d at 173. For example, counsel spent approximately 84 hours preparing plaintiff's motion for attorneys' fees. Although plaintiff's counsel explained at oral argument why they believed their hours spent on the case were reasonable and the Court does not doubt that counsel actually spent this amount of time preparing the motion, such extensive preparation is excessive and warrants a further fee reduction. *See Hensley*, 461 U.S. at 434

9

("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 163 (W.D.N.Y. 2005) (reducing hours where "based on the Court's familiarity with this case and the issues presented," it believed that some of the time billed was excessive).

Further, the billing records reflect that counsel's standard practice was to record their time in quarter-hour increments. Many phone calls and e-mails throughout the billing record are billed at a quarter of an hour.[2] Although some of these entries are billed as "no charge," a large percentage of them are charged at counsel's full rate. It seems very unlikely that each phone call and e-mail exchange took fifteen minutes, and thus, the Court finds that a reduction is further warranted based on counsel's quarter-hour billing. *See, e.g.*, *Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Trust, Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Funds, Scholarship Fund, & Other Funds v. Brookman Const. Co.*, No. 12-CV-2180 (ARR) (LB), 2013 WL 5304358, at *5 (E.D.N.Y. Sept. 19, 2013) ("Quarter-hour billing tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete and adds an upward bias in virtually all cases." (internal quotation marks and citations omitted)).

The County also argues that a number of billing entries are non-compensable because they comprise clerical or administrative work. The Court agrees that a number of tasks for which Ostrove, Okano, and Weinick billed were "non-legal or ministerial tasks that need not be performed by – or billed at the rate of – a lawyer with [their] experience." *Harty v. Par Builders, Inc.*, No. 12-CV-2246 (CS), 2016 WL 616397, at *5 (S.D.N.Y. Feb. 16, 2016). For example, Weinick billed at his full rate multiple times for filing motions with the Court (including on March 7, 2012, March 9, 2012, May 23, 2012, November 6, 2012, March 11, 2013). (*See* Ex. A to Pl.'s Mem.) On February 21, 2014, Okano billed at his full rate for converting the jury charge to a Word document and emailing it to Ostrove. (*Id.*) Such tasks are clearly non-legal and clerical in nature, and thus, should not be billed at attorney rates. *See, e.g.*, *Harty*, 2016 WL 616397, at *5 (reducing rate for hours billed for assembling and filing motions, briefs, and exhibits); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 36 (N.D.N.Y. 2015) (reducing hourly rate so as to apply paralegal rate for clerical tasks, such as preparing and filing notice of appearance, administrative forms, and scheduling notifications, and conferring with court regarding filings); *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-0121 (SJF) (ARL), 2015 WL 3444896, at *15 (E.D.N.Y. May 28, 2015) (reducing attorney's fees where counsel "improperly include[d] clerical tasks, *e.g.*, docketing filing and transmitting documents and information.")

In light of these problems with plaintiff's counsel's billing records, the Court concludes that a twenty percent across-the-board reduction in counsel's hours is warranted. Thus, the Court calculates the lodestar amount based on 236 hours

---

[2] The County points to two examples of entries billed at .25, in support of their argument that a reduction is warranted: reviewing the scheduling order on July 11, 2011, and emailing County attorneys to secure an adjournment on December 16, 2015. (*See* County's Opp. at 15.) Plaintiff's counsel concedes in the reply brief that they have no objection to treating these entries as "no charge." (Pl.'s Reply at 12–13.)

expended by Ostrove, 213 hours expended by Weinick, 217.6 hours expended by Okano in this litigation.[3]

C. Success

The Supreme Court has recognized that "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440; *Stanczyk v. City of New York*, 752 F.3d 273, 284–85 (2d Cir. 2014) (citing *Hensley*, 461 U.S. at 434–35). In *Hensley*, the Supreme Court held that:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. at 440; *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). The Supreme Court further explained that, in cases where a plaintiff pursues "distinctly different claims for relief that are based on different facts and legal theories" (even though brought against the same defendants), "counsel's work on one claim will be unrelated to his work on another claim" and thus, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 434-35. However, "[a] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000) ("The district court therefore has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or are based on related legal theories." (internal quotation marks and citation omitted)).

Here, the County argues that a fee reduction is warranted because plaintiff's claims for disability discrimination and hostile work environment were rejected by the jury and plaintiff only prevailed on his First Amendment retaliation claim. The County argues that plaintiff's disability discrimination claim involved a distinct set of facts from his First Amendment retaliation claim, and thus, that the Court should not award fees for the efforts expended on pursuing plaintiff's disability claim.

However, the Court finds that the issue of plaintiff's transfer was inextricably intertwined with his retaliation claim, and that most of the evidence regarding the transfer would be relevant background for purposes of the retaliation claim. Thus, the evidence on the retaliation claim substantially overlapped with all the other claims. Despite the substantial overlap, the Court recognizes there was some extremely limited testimony and evidence regarding the alleged disability that was unrelated to the retaliation claim. However, the Court

---

[3] Ostrove: 295 – (295 * .20) = 236
Weinick: 266.25 – (266.25 * .20) = 213
Okano: 272 – (272 * .20) = 217.6

11

concludes that the twenty percent across-the-board reduction in hours adequately accounts for any limited additional work by plaintiff's counsel on claims that were ultimately unsuccessful.

Further, to the extent that the County argues that a fee reduction is warranted because the jury award was substantially less than what the plaintiff sought, the Court disagrees. The jury award, in this case, did not involve nominal damages, but rather a substantial award of $150,000 in compensatory damages. Although plaintiff sought significantly more from the jury in damages, the Court views the jury's award as "substantial relief" and plaintiff clearly achieved substantial success in the litigation. Thus, the amount of the award provides no basis for a reduction in the fees based on limited success. *See, e.g.*, *Siracuse v. Program for the Dev. of Human Potential*, No. 07 CV 2205 (CLP), 2012 WL 1624291, at *21–22 (E.D.N.Y. Apr. 30, 2012) (declining to reduce fee award on basis that plaintiff sought $700,000 in damages but was awarded only $72,000); *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007) (rejecting argument that plaintiff's success was "limited" where jury awarded plaintiff $2.5 million was less than the $21 million sought). Thus, the Court declines to impose a further fee reduction based upon limited success at trial.

* * *

Accordingly, the Court calculates the lodestar figure to be $222,153.00, which represents 236 hours of Ostrove's time at a rate of $425 per hour, 21.08 hours of Ostrove's travel time at a rate of $212.50 per hour,[4] 213 hours of Weinick's time at a rate of $300 per hour, 13.5 hours of Weinick's travel time at a rate of $150 per hour, 217.6 hours of Okano's time at a rate of $225 per hour, 1.75 hours of Okano's travel time at a rate of $112.50 per hour, 4.25 hours of Bove's time at a rate of $100 per hour, and 18.67 hours of Guerra's time at a rate of $100 per hour.[5] Moreover, the Court sees no reason to depart from the lodestar figure in this case, *see, e.g.*, *Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee), and thus awards plaintiff $222,153 in attorneys' fees.

### D. Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573,

---

[4] "Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time," *see, e.g.*, *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010), and plaintiff's counsel charged 50% of their billing rate for travel time in this case, (*see* Ex. A. to Pl.'s Mem.) Thus, the Court uses 50% of the rate awarded to each attorney to compensate for the travel time in this case.

[5] Although plaintiff's counsel was retained on a contingency-fee basis, "the contingency fee may not serve as a cap on an attorney fee award." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 142 (2d Cir. 2007).

at *10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Here, plaintiff requests $5,433 for expenses incurred in this action. However, plaintiff's own expense sheet correctly indicates that the total expenses amount to $4,645.30 as opposed to $5,433. (*See* Ex. G to Pl.'s Mem.) Plaintiff includes as expenses: the filing fee ($350), process servers ($747), transcripts ($2,796.60), supplies ($28.47), Federal Express ($166.77), payment of the Second Circuit docketing fee ($455), and type write word processing service for EDNY conference ($101.46). (*See id.*) Plaintiff includes documentation for all but $68.32 of Federal Express expenses. (*See id.*) Accordingly, the Court awards plaintiff $4,576.98 in expenses.

### III. CONCLUSION

For the reasons set forth herein, the Court awards plaintiff $222,153.00 in attorneys' fees and $4,576.98 in expenses.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 4, 2016
Central Islip, NY

\* \* \*

Plaintiff is represented by Rick Ostrove and Matthew Brian Weinick of Leeds Brown Law, P.C., One Old Country Road, Suite 347, Carle Place, NY, 11514. The County is represented by Marc S. Wenger and Daniel Sergio Gomez-Sanchez of Jackson Lewis LLP, 58 S Service Road, Suite 410, Melville, NY 11747.